**Electronically Filed
Intermediate Court of Appeals
28915
15-SEP-2011
09:02 AM**

NO. 28915

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


HAWAII HOUSING FINANCE AND DEVELOPMENT CORPORATION,
A PUBLIC BODY AND A BODY CORPORATION AND
POLITIC OF THE STATE OF HAWAI'I, Plaintiff-Appellee,
v. JAMES TODD TACHERA, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KOOLAUPOKO DIVISION
(CIVIL NO. 1RC07-1-2680)


MEMORANDUM OPINION
(By:  Foley, Presiding Judge, Fujise and Leonard, JJ.)

        Defendant-Appellant James Todd Tachera (**Tachera**)
appeals from the Judgment for Possession (**Judgment**) and Writ of
Possession (**Writ**), filed on October 9, 2007, in the District
Court of the First Circuit, Ko'olaupoko Division (**District
Court**), in favor of Plaintiff-Appellee Hawaii Housing Finance and
Development Corporation, a Public Body and a Body Corporation and
Politic of the State of Hawai'i (**HHFDC**).[1]

I.    BACKGROUND

        This appeal involves an agricultural lot, consisting of
approximately 62.5 acres, Tax Map Key (**TMK**) No. 4-8-07:11,
located in the Waiahole Valley Subdivision in Kaneohe, Hawai'i,
on the island of Oahu (**Lot**).  The Lot has been occupied by

---

        [1]    The Honorable Christopher P. McKenzie entered the Judgment and
Writ.

Tachera or his relatives since the late 1960s and used for diversified agricultural purposes. Tachera paid a rental rate of $28 per month.

Prior to 1994, the Lot was managed by the State of Hawai'i Department of Land and Natural Resources (**DLNR**). On December 3, 1983, DLNR issued Revocable Permit No. S-6071 (**Permit**) to Tachera to use the Lot for agricultural purposes. The Permit was initially issued for one year and thereafter on a monthly basis. The Permit contained the following provision regarding revocation: "The Board may revoke this Permit for any reason whatsoever, upon written notice to the Permittee at least thirty (30) days prior to such revocation."

On or about September 13, 2002, Tachera was notified by the DLNR:

> It appears back in 1995 our staff failed to inform you that the 62.50 acre parcel you were renting from our Department was turned over to the Housing and Community Development Corporation of Hawaii (HCDCH).[2] Our staff terminated your month-to-month revocable permit on December 31, 1993.
>
> To make your continued use of the property legal, you need to call the Housing and Community Development Corporation of Hawaii . . . to either obtain a lease or permit.

There is no evidence in the record that Tachera thereafter entered into a written lease.

By letter dated September 25, 2006, reportedly after correspondence offering a long-term lease, Tachera was notified by HHFDC that it was "terminating his month-to-month lease[.]" The September 25, 2006 termination letter also stated:

> The HHFDC further rescinds its offer for a long-term lease of the Lot . . . . All previous HCDCH offers expired after you failed to timely accept them by the deadlines set forth in the HCDCH letters dated February 24, 2005, March 24, 2005, May 11, 2005[,] and June 21, 2005. This FINAL NOTICE AND DEMAND TO VACATE the Lot serves as written advance forty-five (45) days notice that you must vacate the property no later than November 13, 2006.

---

[2]     The HHFDC has undergone several name changes. The HHFDC was formerly known as the Housing and Community Development Corporation of Hawaii (**HCDCH**), as well as the Housing Finance and Development Corporation (**HFDC**).

> . . . The termination of your month-to-month lease is based
> on delinquent lease rent, outstanding water payments, and
> . . . violations of the [Declaration of Restrictive
> Covenants for Waiahole Valley Agricultural Park and
> Residential Lots Subdivision and Homestead Road Lands].

The letter was signed by Orlando "Dan" Davidson, Executive Director of HHFDC.  Tachera did not vacate the Lot and continued to occupy the Lot after November 13, 2006.

On May 3, 2007, HHFDC filed a "Complaint for Ejectment or in the Alternative for Summary Possession" (**Complaint**) against Tachera, seeking a judgment for possession and a writ of possession.  Tachera did not file a written answer to the Complaint and did not assert any counterclaims, cross-claims, or third-party claims.

On July 12, 2007, the District Court began a three-day trial on HHFDC's Complaint.[3]  Thereafter, on October 1, 2007, the District Court issued "Findings of Fact, Conclusions of Law and Decision," including:

<u>FINDINGS OF FACT</u>

. . . .

3.    [HHFDC] is the owner or is the authorized agent of the owner of real property (hereafter sometimes referred to as the property) situated in Waihole [sic] Valley, District of Koolaupoko, City and County of Honolulu, State of Hawaii described as 62.50 acres of agricultural farmland with a Tax Map Key of 4-8-07:11, lots 1 and 2.

4.    The property has been occupied by [Tachera] or his relatives since the late 1960s.

5.    On December 2, 1983[,] [HHFDC's] predecessor in interest and [Tachera] signed Revocable Permit No. S-6071 allowing [Tachera] to occupy the property on a "month-to-month" basis at a rental rate of $28 per month.

6.    [Tachera] presently continues to pay and [HHFDC] presently continues to accept rent.  [Tachera] is current with respect to rent.

---

[3]    The Honorable Barbara Richardson appears to have presided over the trial on July 12, 2007.  The Honorable Christopher P. McKenzie presided over the trial on July 27, 2007, and August 7, 2007.

7.    Permit No. S-607 [sic][4] provided among other things:
      "The Board may revoke this Permit for any reason
      whatsoever, upon written notice to the Permittee at
      least thirty (30) days prior to such revocation. . .
      ."

8.    Prior to 1994[,] the property was owned and/or managed
      by [t]he State of Hawaii Department of Land and
      Natural Resources (sometimes referred to as [HHFDC's]
      predecessor in interest).  In 1994[,] ownership and/or
      management of the property was transferred to [HHFDC].

9.    On September 13, 2002[,] [Tachera] was notified by
      letter that he was to contact [HHFDC] to obtain a
      lease or permit.  [Tachera] did not.

10.   That same September 13, 2002 letter advised [Tachera]
      that Permit No. S-607 [sic] was terminated on December
      31, 1993.

11.   From, at least, September 13, 2002[,] to present[,]
      [Tachera] has used the property in accordance with the
      terms of Permit No. S-607 [sic] and has paid rent
      which was accepted by [HHFDC].

12.   On February 24, 2005, March 24, 2005, May 11, 2005 and
      June 21, 2005[,] [HHFDC] offered [Tachera] a long term
      lease of the property.  [Tachera] did not respond to
      or accept the offers.

13.   By letter dated September 25, 2006, mailed on
      September 26, 2006 and received by [Tachera] on
      September 28, 2006[,] [HHFDC] terminated the month to
      month tenancy and instructed [Tachera] to vacate the
      property not later than November 13, 2006.

      . . . .

15.   The principle use of the property by [Tachera] is for
      farming of diversified agriculture.

      . . . .

19.   [Tachera] did not operate a vehicle junkyard on the
      property[.]

20.   Anyone, other than [Tachera], who occupied the
      premises were either homeless squatters or an
      acquaintance of [Tachera] that stayed on the property
      temporarily to help with the farming.

21.   Any improvements on the property . . . were built
      according to applicable codes and are functioning as
      intended[.]

---

      [4]    Although the District Court order states "Permit No. S-607," the
District Court clearly intended to refer to "Permit No. S-6071," which is the
only permit referenced in the record.

CONCLUSIONS OF LAW

1.  This court has jurisdiction over the subject matter and the parties.

2.  [HHFDC] is bound by the actions of the State of Hawaii, Department of Land and Natural Resources'[s] actions as they relate to the property.

3.  [HHFDC] and its predecessor in interest's inaction after its purported termination of Permit S-607 [sic] was reasonably relied on by [Tachera] to his detriment. Accordingly, [HHFDC] is estopped from claiming the permit was revoked or has waived its right to revoke the permit.

4.  The terms of Permit S-607 [sic] govern the rights and duties of [HHFDC] and [Tachera] with respect to the property.

5.  Hawaii Revised Statutes, Chapter 521, Residential Landlord-Tenant Code does not apply to this matter.

6.  Permit S-607 [sic] created a month to month tenancy between [HHFDC] and [Tachera].

7.  Except for [Tachera's] obligation to vacate, he is not otherwise in violation of Permit S-607 [sic].

8.  [HHFDC's] notice of at least 45 days to vacate the property was reasonable under the circumstances of this case.

9.  Said notice was both definite and seasonable as to when [Tachera] should vacate and was not misunderstood.

10. [HHFDC's] notice to vacate was in accordance with the terms of Permit S-607 [sic].

11. Even if Permit S-607 [sic] did not apply to govern the rights and duties of the parties and [Tachera] was considered a tenant-at-will, [HHFDC's] termination of the tenancy and notice to vacate was valid and effective.

The District Court concluded that HHFDC was entitled to a judgment for possession. On October 9, 2007, the District Court issued the Judgment and Writ. On October 15, 2007, Tachera filed a motion for reconsideration, which was denied on November 23, 2007. Tachera timely filed a notice of appeal.

II.   POINTS OF ERROR

Tachera raises the following points of error on appeal:

(1)   HHFDC failed to establish its title to the property and, therefore, the District Court erred in entering Judgment for Possession in favor of HHFDC;

(2)   HHFDC failed to establish any of the violations asserted in its Complaint as the grounds for termination of the tenancy and, therefore, the District court erred in entering Judgment in favor of HHFDC;

(3)   The district court's conclusions of law (**COLs**) that HHFDC's notice to vacate was reasonable and enforceable are contrary to controlling law;

(4)   The District Court's finding of fact (**FOF**) 12 that "[o]n February 24, 2005, March 24, 2005, May 11, 2005[,] and June 21, 2005, [HHFDC] offered [Tachera] a long term lease of the property . . . [and] [Tachera] did not respond to or accept the offers" is not supported by admissible evidence;

(5)   The District Court's COL that it has jurisdiction over this lawsuit is erroneous;

(6)   The actions of the HHFDC and the District Court in terminating Tachera's interest in the property without cause deprived Tachera of his due process and equal protection rights under both the United States and Hawai'i Constitutions; and

(7)   HHFDC and the District Court failed to protect Tachera's right to be compensated for the value of his growing crops or the right to harvest such crops post-termination.

III.  APPLICABLE STANDARDS OF REVIEW

"Points not presented in accordance with [Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)] will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."  HRAP 28(b)(4).

A trial court's FOFs are subject to the clearly erroneous standard of review.  Chun v. Bd. of Trs. of the

Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416,
430, 106 P.3d 339, 353 (2005).

> An FOF is clearly erroneous when, despite evidence to
> support the finding, the appellate court is left with the
> definite and firm conviction in reviewing the entire
> evidence that a mistake has been committed. An FOF is also
> clearly erroneous when the record lacks substantial evidence
> to support the finding. We have defined substantial
> evidence as credible evidence which is of sufficient quality
> and probative value to enable a person of reasonable caution
> to support a conclusion.

Bhakta v. County of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953
(2005) (citations and brackets omitted).

A COL is not binding upon an appellate court and is
freely reviewable for its correctness. Chun, 106 Hawai'i at 430,
106 P.3d at 353 (internal quotation marks, citations, and
brackets omitted). The appellate court reviews COLs under the
right/wrong standard. Id. Thus, a COL that is supported by the
trial court's FOFs, and that reflects an application of the
correct rule of law, will not be overturned. Id. A COL that
presents mixed questions of fact and law is reviewed under the
clearly erroneous standard because the court's conclusions are
dependent upon the facts and circumstances of each individual
case. Chun, 106 Hawai'i at 430, 106 P.3d at 353.

"The existence of jurisdiction is a question of law
that [the appellate court reviews] de novo under the right/wrong
standard." Captain Andy's Sailing, Inc. v. Dep't of Land &
Natural Res., State of Hawai'i, 113 Hawai'i 184, 192, 150 P.3d
833, 841 (2006) (internal quotation marks and citations omitted).

IV. DISCUSSION

A. Ownership of the Lot

Tachera alleges that HHFDC failed to prove ownership of
the Lot because no deed transferring title was entered into
evidence to show that title passed from DLNR to HHFDC. Tachera
nevertheless bases much of his appeal on Act 330, enacted by the

1993 Hawaiʻi State Legislature.[5]  Act 330, approved June 23, 1993, expressly provided for the transfer of the subject Lot, TMK No. 4-8-07:11, from DLNR to HFDC, the former name of HHFDC:[6]

> SECTION 1.  The housing and development corporation (HFDC) is developing an agricultural park and low-density residential development approximately six hundred acres of land in Waiahole Valley on the island of Oahu.  HFDC holds title to this land.  The purpose of this park and development is to provide long-term affordable rental housing for tenants in Waiahole and Waikane valleys[,] . . . to promote diversified agriculture, and to preserve the rural lifestyle of the valleys.
>
> There are ten parcels abutting the HFDC property under control of the department of land and natural resources (DLNR).  These lands are farmed by the tenants, who are a part of the wider Waiahole-Waikane community.  Combining these lots with the HHFDC property would promote the master planning of diversified agriculture in Waiahole, make government functions more efficient by having one state agency overseeing the area, and help bring the community together.
>
> The purpose of this Act is to transfer to these ten parcels of land to HHFDC so that they may be consolidated in the Waiahole agricultural park.
>
> SECTION 2.  The following parcels of land are hereby transferred from DLNR to HHFDC:

> | Tax map key number | Lot size |
> |---|---|
> | . . . | . . . |
> | 4-8-07:11 | 62.5 acres |
> | . . . | . . . |

> The transfer shall be effective immediately and DLNR shall be responsible for properly documenting the change in title.
>
> SECTION 3.  Upon taking title to the above-listed parcels HHFDC shall immediately offer leases to those persons who hold revocable permits to the parcels from DLNR as of the effective date of this Act.  The leases shall be negotiated and shall be on the same terms as leases offered to all other persons leasing parcels from HHFDC within the Waiahole agricultural park.
>
> SECTION 4.  This Act shall take effect upon its approval.

1993 Haw. Sess. Laws Act 330, at 762.  By operation of law, as conceded by Tachera on appeal, HHFDC owns or controls the subject

---

[5]     In the court below, neither party nor the district court discussed or addressed Act 330.

[6]     See n.3 above regarding agency name changes.

Lot.   In addition, HHFDC presented probative evidence of ownership or administrative control of the Lot, as determined by the District Court, and Tachera did not present any evidence to counter HHFDC's claim of ownership or administrative control. Tachera does not contest COL 4, in which the District Court concluded:  "The terms of Permit S-607[1] govern the rights and duties of [HHFDC] and [Tachera] with respect to the property." Finally, for purposes of summary possession, HHFDC sufficiently established its right to seek possession of the Lot.  See, e.g., Kee Tun v. Ching Shai, 11 Haw. 444, 447 (Hawaiʻi Rep. 1898) ("[w]here neither party has title, the one who on the whole has the better right to the possession should prevail" ).

    B.   Grounds for Termination of Tachera's Tenancy

        Tachera argues that the District Court erred in entering the Judgment in favor of HHFDC because HHFDC did not establish any of the restrictive covenant violations identified in the Complaint.  Tachera argues that it was improper for the District Court to enter judgment based on "an 'alternative' theory that neither [party] pled or litigated (i.e., the theory that 'cause' for termination was not required)."  However, Tachera makes no argument that the terms of the Permit do not or should not apply,[7] and does not assert that he raised any objection in the District Court based on insufficient pleading or a failure to amend the Complaint to include this alternate theory.  Enoka v. AIG Hawaiʻi Ins. Co., 109 Hawaiʻi 537, 546, 128 P.3d 950, 859 (2006) ("In general, failure to raise or properly reserve issues at the trial level would be deemed waived." (internal quotation marks and citation omitted)).  Accordingly, we need not further address Tachera's second point of error.

---

     [7]    On the contrary, in his motion for reconsideration, Tachera favorably cited the court's conclusion regarding the applicability of the Permit, but argued that, under the circumstances, it would be "fair and equitable" for the court to allow him to remain a tenant under the terms and conditions of the Permit.

C.    HHFDC's Notice to Vacate

Tachera argues that the District Court erred in entering COLs Nos. 8-11 because the conclusions are contrary to controlling law.  Tachera primarily argues that Act 330 required that Tachera be given a long-term lease offer, and as such, he was entitled to more than a mere possessory interest in the Lot and HHFDC was required to follow its procedures for termination of long-term, written leases.

Tachera's point of error fails to comply with HRAP Rule 28(b)(4) in that Tachera does not state where in the record the alleged error occurred or where the error was objected to.  In addition, it appears that Tachera's argument regarding Act 330 is presented for the first time on appeal.  This court need not consider a point that was not appropriately presented in the trial court.  See HRS § 641-2 (2004) ("The appellate court . . . need not consider a point that was not presented in the trial court in an appropriate manner."); see also Okuhara v. Broida, 51 Haw. 253, 255, 456 P.2d 228, 230 (1969); Craft v. Peebles, 78 Hawai'i 287, 294, 893 P.2d 138, 145 (1995);  Price v. AIG Hawai'i Ins. Co., Inc., 107 Hawai'i 106, 111, 111 P.3d 1, 6 (2005); HRAP Rule 28(b)(4)(iii).

Even assuming, arguendo, that Act 330 entitled Tachera to an offer to enter into a long-term lease of the Lot, there is testimony in the record that HHFDC made multiple long-term lease offers to Tachera and that Tachera did not respond.  On direct examination, HHFDC's witness, Marlene Lemke (**Lemke**), testified as follows:

> Q [(by HHFDC's Attorney)]    Ms. Lemky [sic], since 1994 when the lot was transferred to [HHFDC], was there ever a written interim lease agreement with Mr. Tachera to lease the subject agricultural lot?
>
> A [(by Lemke)]    No, there wasn't.
>
> Q         What about since 1994, was there ever a long-term lease agreement with Mr. Tachera to lease the agricultural lot?

10

A        Mr. Tachera was sent letters offering him a long-term lease in 2005, but there was no response by set deadlines and so there was no long-term lease issued.

Tachera's attorney did not object to the Lemke's testimony regarding the long-term lease offers. In fact, when HHFDC's attorney first began questioning Lemke regarding the HHFDC's offers to Tachera, Tachera's attorney's only objection was to the relevancy of such questions, not as to whether such offers were actually made. Although Tachera's attorney later cross-examined Lemke as to whether she was personally involved in making much offers, there was no objection on Tachera's part regarding Lemke's personal knowledge. "The grounds for an objection must be specifically stated in order to preserve a point for appeal." Lee v. Kimura, 2 Haw. App. 538, 546, 634 P.2d 1043, 1049 (1981) (citations omitted). In addition, Tachera himself seems to acknowledge that he had been offered a lease at some point, but was unsatisfied with the proposed terms:

THE COURT:  You don't have a long-term lease.

MR. TACHERA:  As what I was trying to work for and that's why I explain to 'em before, how can I sign a lease that, it's like Catch 22, I cannot comply with. Why I go sign something. It's just like putting a rope around my neck, you know what I mean . . ."

Although not properly identified as a point of error, including where in the record the issue was raised before the trial court, Tachera argues that HHFDC's notice to vacate could not have been reasonable and/or in accordance with the terms of the Permit because the decision to revoke was not carried out by a "Board" acting by majority vote of a quorum. In doing so, he is presumably challenging COL 10, but this is unclear. Tachera asserts that a conclusion of reasonable notice is inconsistent with unchallenged FOF 7, which found that "Permit No. S-607[1] provided among other things:  'The Board may revoke this Permit for any reason whatsoever, upon written notice to the Permittee at least thirty (30) days prior to such revocation[.]'" Tachera's argument that the District Court's conclusions are in

11

conflict with its findings is not identified in Tachera's points of error, the specific conclusion Tachera is challenging is not specified, Tachera does not identify where in the record the alleged error occurred or where it was brought to the attention of the trial court, thereby violating HRAP Rule 28(b)(4), and Tachera's argument otherwise appears to be without merit.  The District Court's conclusion that termination of Tachera's month-to-month occupancy, by HHFDC (DLNR's successor-in-interest to the Lot), was properly instituted by the letter signed by HHFDC Executive Director did not create a conflict between any of its FOFs or COLs.

D.    FOF 12

In a related argument, Tachera argues that FOF 12 was not supported by admissible evidence.  As stated above, FOF 12 provides that "[o]n February 24, 2004, March 24, 2005, May 11, 2005[,] and June 21, 2005[,] [HHFDC] offered [Tachera] a long term lease of the property.  [Tachera] did not respond to or accept the offers."  Tachera argues that the only evidence on the record of long-term lease offers was Exhibit 5 (the lease termination letter), that Exhibit 5 contains hearsay within hearsay, and that Lemke did not have personal knowledge of the contents of Exhibit 5.  Tachera objected to the admission of Exhibit 5 on other grounds.  The District Court agreed that portions of the letter constituted hearsay and limited the scope of the letter's admissibility as follows:

> THE COURT:  [M]y inclination then would be . . . [to] accept [E]xhibit 5 in evidence, but not for the purposes of proving that the lot was not used for diversified agriculture, not for the purposes of proving that [Tachera is] leasing or renting a single-family dwelling on the lot, and not for the purposes of proving that the lot is used as a junkyard, or automobile junkyard, or that there are noxious, illegal or offensive activity [sic] being carried out, and not for the purpose of proving that he failed to make any improvements on the lot.
>
> . . . .
>
> For that reason, it's hearsay that goes to the crux of this case.

. . . .

> I'll receive [E]xhibit 5 in evidence, but not for the purpose of proving the truth of those allegations that I mentioned.

. . . .

> [HHFDC's ATTORNEY]: And you're allowing . . . proof that the month-to-month lease was terminated?
>
> THE COURT: Yes.

Whether or not the letter was admitted for the purpose of establishing that offers were made to Tachera was not addressed by the District Court because Tachera made no argument or objection as such.

In any event, FOF 12 is supported, as discussed above, by Lemke's unchallenged testimony that such offers were made to Tachera. Accordingly, FOF 12 is not clearly erroneous.

E.   Jurisdiction

Tachera asserts that the District Court lacked jurisdiction over this summary possession action because: (1) an administrative hearing was required; and (2) at a minimum, there were "issues of equity" that should have resolved in the Circuit Court. However, as Tachera concedes, the administrative rules he relies on do not appear to "technically" apply to HHFDC. Moreover, this primary jurisdiction argument does not appear to have been raised in the District Court, although a related question was posed to HHFDC's witness, and Tachera does not argue that exclusive jurisdiction over this matter lies elsewhere. Indeed, Tachera does not challenge the District Court's findings and conclusions that the terms of the Permit govern the rights and duties of the parties, including the creation of a month-to-month tenancy. Tachera's arguments regarding the "equities" of this case are equally unavailing. There is no evidence that Tachera entered into a long-term lease. In ejectment and summary possession proceedings, the District Court can exercise jurisdiction where the title to real estate is not in question.

See HRS §§ 604-5(d), 604-6, and 666-6 (1993); see also Queen Emma Foundation v. Tingco, 74 Haw. 294, 305-06, 845 P.2d 1186, 1191 (1992). Although Tachera argues that HHFDC did not prove its title, as we discussed above, there is no meaningful dispute as to whether HHFDC owns the land, and Tachera himself does not claim title. Thus, title to real estate was not at issue and jurisdiction was proper. Furthermore, Tachera's failure to challenge the basis of the District Court's decision, i.e., that the Permit governs, renders his argument that he has more than a mere possessory interest unpersuasive. Not only does Tachera fail to challenge COL 4, Tachera also does not challenge COL 6, which provides that "Permit S-607[1] created a *month to month tenancy* between [HHFDC] and [Tachera]."

F. Due Process and Equal Protection

Tachera presents conclusory assertions that the District Court and HHFDC violated his due process and equal protection rights by depriving Tachera of the Lot without cause. Without support or elaboration as to how specifically the District Court erred with respect to these allegations, Tachera fails to present a discernible argument. "An appellate court need not address matters as to which the appellant has failed to present a discernible argument." Int'l Sav. & Loan Ass'n, 93 Hawaiʻi at 473, 5 P.3d at 463; HRAP Rule 28(b)(7) (stating that the argument in the opening brief must contain "citations to the authorities, statutes and parts of the record relied on" and "[p]oints not argued may be deemed waived"); see also, e.g., Ala Moana Boat Owners' Ass'n v. State, 50 Haw. 156, 158, 434 P.2d 516, 518 (1967) (citations omitted; Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995); Citicorp Mortgage, Inc. v. Bartolome, 94 Hawaiʻi 422, 433, 16 P.3d 827, 838 (App. 2000).

G.    Compensation for Crops

Lastly, Tachera argues that he was entitled to compensation for the value of the crops on the Lot at the time his tenancy was terminated pursuant to the common law doctrine of emblements.  Tachera did not request such compensation in the court below, and this argument is clearly raised for the first time on appeal; thus, we need not consider this point.  See HRS § 641-2; Okuhara, 51 Haw. at 255, 456 P.2d at 230; Craft, 78 Hawai'i at 294, 893 P.2d at 145;  Price, 107 Hawai'i at 111, 111 P.3d at 6; HRAP Rule 28(b)(4)(iii).

V.    CONCLUSION

For these reasons, the District Court's October 9, 2007 Judgment for Possession is affirmed.

DATED:  Honolulu, Hawai'i, September 15, 2011.

On the briefs:

Mark T. Shklov
Michel A. Okazaki
    and
John G. Horak
    and
Gilbert D. Butson
(Reinwald O'Connor & Playdon LLP)
for Defendant-Appellant

Diane K. Taira
Nalani P. Wilson-Ku
Deputy Attorneys General
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge